IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Jason L. Gainey, ) | Case No.: 2:21-cv-00944-JD-MGB |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER AND OPINION** |
| Officer Matthew Barwick, Officer Willie ) | |
| Sweat, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the Court with the Report and Recommendation ("Report and Recommendation" or "Report") of United States Magistrate Judge Mary Gordon Baker, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2) of the District of South Carolina.[1] (DE 68.)  Plaintiff Jason L. Gainey ("Plaintiff" or "Gainey") filed this action *pro se* alleging Defendants Officer Matthew Barwick ("Barwick") and Officer Willie Sweat ("Sweat") (collectively "Defendants") violated his constitutional rights when Barwick caused him injury by placing handcuffs on him extremely tight during his arrest.  (DE 15.)  Gainey also claims that Sweat caused him injury by refusing to remove the extremely tight handcuffs and slamming a cell door on Gainey's handcuffs after his arrest.  (DE 15.)  Gainey seeks compensatory and punitive damages as well as injunctive relief.  (DE 15, pp. 14–15.)

On June 6, 2022, Defendants filed a Motion for Summary Judgment.  (DE 52.)  By Order filed June 7, 2022, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Plaintiff was

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court.  See Mathews v. Weber, 423 U.S. 261, 270-71 (1976).  The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made.  The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions.  28 U.S.C. § 636(b)(1).

1

advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (DE 53.) Plaintiff filed a response in opposition on June 30, 2022 (DE 55), to which Defendants replied on July 5, 2022 (DE 56). On September 8, 2022, Plaintiff filed a notarized sworn declaration.[2] (DE 57.) On October 28, 2022, the magistrate judge issued the Report, recommending the Motion for Summary Judgment (DE 52) be granted in part and denied in part. The Report recommended 1) to the extent Plaintiff brings a § 1983 claim for deliberate indifference to medical needs, this claim should be dismissed, 2) any § 1983 claims brought against Defendants in their official capacities should be dismissed, and 3) Plaintiff's § 1983 claims for excessive force should remain against Defendants in their individual capacities. (DE 57, p. 20.) For the reasons stated below, the Court adopts the Report and grants Defendants' Motion for Summary Judgment, in part, and denies it in part as provided herein.

## BACKGROUND

The Report and Recommendation sets forth the relevant facts and legal standards, which the Court incorporates herein without a full recitation. However, as a brief background relating to the objections raised by Plaintiff, the Court provides this summary.

This action arises from Plaintiff's arrest and detention on April 3, 2020. Plaintiff alleges that when Barwick placed him under arrest, Barwick did not "double lock[] the cuffs properly" and the handcuffs "were extremely tight, . . . pinching [Plaintiff] in pain." (DE 15, p. 6.) Plaintiff alleges Barwick ignored Plaintiff's repeated requests to loosen the cuffs and to engage the safety lock. According to Plaintiff, Barwick said he would not fix the cuffs until they arrived at the Sumter County Sheriff's Office Detention Center ("Detention Center"). (Id.)

---

[2] The Court notes that the Report's summary of the facts are based on Gainey's unverified Amended Complaint. However, the Report relies on Gainey notarized sworn declaration to support his allegation in his complaint and to refute the evidence offered by the Defendants. Therefore, the Court relies on the same for summary judgment.

Plaintiff alleges that when he arrived at the Detention Center, Sweat "was the acting officer to book [Plaintiff] in." (Id. at p. 8.) Plaintiff alleges that after he told Sweat "the handcuffs on my hands were extremely too tight, and the cuffs were in fact hurting me so bad I could barely stay calm," Sweat told Plaintiff that "he was going to place [Plaintiff] in a holding cell with the cuffs on, because [Plaintiff] was being too obnoxious." (Id.) According to Plaintiff, he continued to ask that the handcuffs be removed and then "put . . . on right" because they were hurting him. Plaintiff alleges:

> Officer Sweat then walked over to me, grabbed my arm, and forced me into the cell, while the handcuffs were still behind my back. Officer Sweat then deliberately slammed the door (the door struck the unlocked handcuffs that Officer Barwick had failed to safety lock . . . ) striking the unlocked, too tight handcuffs and causing the left handcuff to pass through its gears completely, almost pinching my left hand off.

(Id. at pp. 8–9.)

Plaintiff alleges that he then fell to the floor screaming that the cuffs were closed on his wrist. "Officer Sweat then came running inside the cell, they all jumped on my back trying to get the cuffs off" and Barwick, at 6'3' and over 200 pounds, "slams his knee in my ribs, while I'm screaming for help." (Id. at p. 9.) Plaintiff alleges Sweat then screamed "he's got to go to the hospital." (Id.) Plaintiff alleges that he was transported to the hospital with the handcuffs still behind his back, "with a closed handcuff pinching away and my hand throbbing like it was being cut off." (Id. at p. 10.) According to Plaintiff, the handcuffs had to be cut off by a hospital surgeon. (Id. at p. 9.) Plaintiff alleges that as a result of Defendants' actions, "[t]he bone on my wrist sticks up higher now than before this incident, my hand is now altered in all of its movement, I cannot use my left hand like I could before this incident." (Id. at p. 11.)

The "injuries" portion of the Amended Complaint makes allegations about Plaintiff's medical care. According to Plaintiff, after his handcuffs were removed at the hospital, Barwick "told the doctor they could not x-ray [Plaintiff's] wrist or ribs at the hospital." (Id. at p. 11.)

3

Plaintiff alleges his ribs were x-rayed "over a year later" in 2021 and his wrist has never been "xrayed or seen by an orthopedic surgeon." (Id.) Plaintiff also alleges that he was "not given any medication for swelling, pain, nausea, no ace bandage for my wrist, no medical attention from a trained professional at all after this incident." (Id.)

## DISCUSSION

On November 14, 2022, Defendants filed an objection to the Report. (DE 60.) However, to be actionable, objections to a report and recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir. 1984). "The Supreme Court has expressly upheld the validity of such a waiver rule, explaining that 'the filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute.'" Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (2005) (citing Thomas v. Arn, 474 U.S. 140 (1985)). "A general objection to the entirety of the magistrate judge's report is tantamount to a failure to object." Tyler v. Wates, 84 F. App'x 289, 290 (4th Cir. 2003). "Likewise, a mere restatement of the arguments raised in the summary judgment filings does not constitute an 'objection' for the purposes of district court review." Nichols v. Colvin, 100 F. Supp. 3d 487 (E.D. Va. 2015). In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Upon review, the Court finds that Defendants object to the Report for the following reasons: 1) the Magistrate Judge incorrectly found that "there is reason to find that Plaintiff also

intended to sue Defendants in their individual capacities[]", 2) Gainey has not established a claim for excessive force, and 3) Defendants are entitled to qualified immunity. (DE 60, pp. 2, 3, and 7.) First, as to Defendants claim that the Report incorrectly recommends that Gainey did not intend to sue Defendants in their individual capacity, the Court disagrees.

Gainey does not state whether Defendants are being sued in their individual or official capacity. Nevertheless, in the Fourth Circuit, courts "must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995). The Biggs Court looked at several factors to determine if a defendant is being sued in his official capacity. For instance the court looked to whether the plaintiff alleged that the defendant acted in accordance with a governmental policy or custom, or the lack of indicia of such a policy or custom on the face of the complaint, which Gainey has not alleged here. Moreover, has the plaintiff made a request for compensatory or punitive damages, which Gainey has done here. The Biggs Court also looked to the nature of any defenses raised in response to the complaint like qualified immunity, which Defendants have raised. The Biggs Court opined that "qualified immunity is available only in a personal capacity suit, (citation omitted) the assertion of that defense indicates that the defendant interpreted the plaintiff's action as being against him personally." Biggs, 66 F.3d at 61. Considering these factors, Gainey's claims counsel in favor of Defendants being sued in their individual capacity. Therefore, Defendants' objection is overruled.

Next, as to Defendants' objections regarding whether a fact dispute exists for excessive force and their immunity defense, the Report ably and comprehensively addresses the merits of this recommendation. While Defendants have introduced substantial evidence to support their version of the facts in this case, to include medical records, the Report correctly notes that Gainey

5

has refuted these claims through his declaration filed in response to Defendants' summary judgment motion.[3]  (DE 57.)  However, as stated in the Report, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'"  The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010).  Since Gainey has offered evidence that refutes Defendants' evidence, there are genuine issues of fact in dispute, which makes summary judgment improper.  For the same reason, "summary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the actual conduct of the defendants."  Kane v. Beaufort Cty. Sheriffs Dep't, No. 9:14-cv-508-RMG, 2015 WL 404570, at *5 (D.S.C. Jan. 29, 2015) (quoting Vathekan v. Prince George's Cnty., 154 F.3d 173, 180 (4th Cir. 1998)).

Accordingly, after a thorough review of the Report and Recommendation and the record in this case, the Court adopts the Report (DE 58) and incorporates it by reference.

It is, therefore, **ORDERED** that Defendants' Motion for Summary Judgment (DE 52) is granted, in part, and denied, in part, as provided herein.

**IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
December 19, 2022

---

[3] Gainey alleges, "I let officer #662 know on several occasions prior to the handcuffs having to be cut off that I did in fact ask him to loosen, and fix the handcuffs on the ride to the police station, before I got into the car[.]"  (DE 57, p. 9.)  Further, Gainey states, "I told officer #0662 Barwick before I sat down the cuffs were not safely locked and they were too tight[.]"  (DE 57, p. 13.)